# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| JON C. HANSON, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | Case No. 23-00934-cv-W-BP |
| v. | ) | |
| | ) | |
| JAMES RYDER INTERACTIVE LLC, | ) | |
| | ) | **Jury Trial Demanded** |
| Serve registered agent at: | ) | |
| 1430 S. Federal Highway, Suite 302 | ) | |
| Deerfield Beach, Florida 33441 | ) | |
| | ) | |
|     Defendant. | ) | |

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Jon C. Hanson and for his First Amended Complaint against Defendant James Ryder Interactive, LLC, states:

### BACKGROUND, PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Jon C. Hanson ("Hanson") brings this case against Defendant James Ryder Interactive, LLC ("JRI" or "Defendant") to protect his privacy rights, namely the right to be left alone from unwanted telemarketing phone calls.

2.      Mr. Hanson is a retired member of the United States Air Force, in which he served nearly twenty-four years. Hanson was deployed nearly a dozen times overseas and proudly fought for our country.

3.      Mr. Hanson is now fighting a different battle – getting telemarketers like Defendant to stop incessantly calling his phone numbers despite his phone numbers being registered on the National Do-Not-Call Registry and the Missouri No-Call List.

4.      Defendant incessantly placed telemarketing calls to Mr. Hanson despite: (1) not having the appropriate form of consent to call Mr. Hanson (2) Mr. Hanson's phone numbers being registered on the National Do-Not-Call Registry; and, (3) Mr. Hanson's phone numbers being registered on the Missouri No-Call List.

5.      Fortunately for Mr. Hanson, Congress enacted the Telephone Consumer Protection Act ("TCPA") in the early 1990s to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

6.      The TCPA provides protections for persons like Mr. Hanson who receive telemarketing calls after having registered his phone numbers on the National Do-Not-Call Registry.

7.      The Missouri legislature acted similarly. Specifically, Missouri provides protections for persons, who, like Mr. Hanson, register their phone numbers on the Missouri No-Call List, and continue to receive unwanted telemarketing calls.

8.      In the first four months of 2024 alone, approximately 16.9 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited May 23, 2024). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

9.      Mr. Hanson is an individual who at all times material to this Complaint resided in Jackson County, Missouri and was a citizen of the State of Missouri.

10.     Mr. Hanson is the owner of cell phones. The phone numbers associated with his cell phones are 580-XXX-5594 and 913-XXX-2782.

11.     Mr. Hanson received many of the calls at issue while he was residing in Missouri.

12.     The cell phone accounts associated with these numbers are held in Mr. Hanson's personal name.

13.     Mr. Hanson uses these phones primarily for personal and household purposes, including communicating with friends and family members.

14.     JRI is a Florida limited liability company who has been in good standing to transact business at all times relevant to this Complaint.

15.     JRI transacts business throughout the United States, including in Missouri.

16.     JRI's website states that is a "marketing agency."

17.     JRI's LinkedIn profile states that it "drives results for clients in the legal, financial, health & senior verticals."

18.     JRI's LinkedIn profile states that it does more than "sell leads and calls."

19.     The LinkedIn profile for JRI's Director of Operations states that JRI "specializes in Mass Tort Marketing" and that it is "buying direct calls and leads."

20.     Another LinkedIn profile for a JRI employee states that the employee is the "Director of Call Center Operations" for JRI.

21.     JRI's profile on another website states that JRI likes to "pride ourselves on not only offering exclusive campaigns, but we will beat any confirmed payout once we have tested calls."

22.     On information and belief, Defendant's business model is to attempt to get leads

3

for potential cases for law firms, including, but not limited to, mass tort cases, and then to funnel those leads to law firms or other companies in exchange for a fee per lead.

23.     This Court has jurisdiction over Defendant because Defendant's transacts business in Missouri, and purposefully directed its marketing efforts toward Hanson, a Missouri resident. In addition, Defendant directly targets person in the State of Missouri with telemarketing calls.

24.     Venue is proper as Hanson received the unwanted calls at issue while in this District.

25.     For these reasons, and as set forth generally in this Complaint, this Court has personal jurisdiction over the parties to this action, and venue is proper pursuant to 28 U.S.C. §1391(b)(2).

**Defendant's Incessant Telemarketing Calls**

26.     To avoid receiving unwanted telemarketing calls, Mr. Hanson registered his phone 580 number on the National Do-Not-Call Registry on February 28, 2010 and registered his 913 number on July 2, 2005.

27.     To avoid receiving unwanted telemarketing calls while residing in Missouri, Mr. Hanson registered his phone on the Missouri No-Call List on October 1, 2022.

28.     Beginning on July 17, 2023, and continuing through at least September 11, 2023, Defendant placed at least 94 calls to Mr. Hanson's phones despite his phone numbers being registered on the National Do-Not-Call Registry and the Missouri No Call List.

29.     Ms. Hanson never provided prior express written consent or any form of written consent to Defendant to contact him on his phone.

30.     Mr. Hanson never had a prior existing business relationship with Defendant before receiving the incessant and unwanted calls described below.

4

31.     On information and belief, Defendant placed calls to Mr. Hanson on December 14, 2022.

32.     On information and belief, Defendant placed calls or texts to Mr. Hanson on the following days in 2023: July 17, 18 (six times), 19 (two times), 20 (seven times), 21 (four times), 24, 25 (six times); August 1, 2, 4, 7 (four times), 10 (five times), 11 (four times), 14 (six times), 16 (four times), 17, 18 (six times), 21 (eight times), 22 (three times), 23 (four times), 24 (four times), 25 (two times), 28 (two times), 30 (two times), 31 (four times); September 1 (two times), 8 (three times) and 11.

33.     Mr. Hanson answered various questions of Defendant's representatives who were calling to learn who was calling him for the purpose of being able to stop the incessant and annoying calls.

34.     Mr. Hanson concealed his identity from these callers as he did not know who was calling and did not want to provide any personally identifying information to unknown telemarketers such as Defendant.

35.     During these litany of calls, Defendant's telemarketers attempted to get Mr. Hanson to sign up to be part of mass tort cases, including the Camp Lejeune and Round Up cases.

36.     During these calls, the callers often identified a company called "Reliance Litigation" and attempted to get Mr. Hanson to sign up for Camp Lejeune and Round Up cases.

37.     On information and belief, Defendant placed calls on behalf of Reliance Litigation.

38.     Defendant knew or had reason to know Mr. Hanson's phone numbers were registered on the National Do-Not-Call Registry and the Missouri No-Call List, yet incessantly called him.

5

39. The phone calls Defendant placed to Mr. Hanson were harassing, irritating, invasive and annoying.

40. Defendant's phone calls invaded Mr. Hanson's right to privacy, namely the right to be left alone from unwanted telemarketing calls.

41. Defendant's phone calls caused Mr. Hanson to waste time addressing and/or responding to the unwanted calls.

## DIRECT AND VICARIOUS LIABILITY

42. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

43. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

44. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a

6

reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

45.     If Defendant directly placed the calls to Hanson, Defendant is directly liable for those calls.

46.     However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of telemarketing by third parties who are unknown at this time as the links in the calls have only currently led back to Defendant.

47.     To the extent a third party placed the calls at issue, such party or parties had actual and/or apparent authority to act on behalf of Defendant.

48.     Likewise, Defendant may have also ratified a third party's violations of the TCPA by accepting leads and deriving profit from the improper calls.

49.     Defendant controlled or had the right to control the marketing activities of any potential third party.

50.     Defendant is not permitted under the law to outsource and contract its way out of liability by directing and benefiting from its agents' TCPA violations.

51.     For the counts identified below, if Defendant directly placed the calls at issue, it is directly liable. In the alternative, to the extent any calls were made by a third-party agent(s) acting on Defendant's behalf, Defendant can be held jointly and severally liable as Defendant is vicariously liable for those unlawful calls.

### Count I - Violations of the TCPA, 47 U.S.C. § 227(c) *et seq.*
### (National Do-Not-Call Registry Violations)

52.     Mr. Hanson incorporates the allegations of the previous paragraphs as if fully stated in this Count.

53.     Section 227(c)(5) of the TCPA and its accompanying regulation, 47 C.F.R. §

64.1200(c)(2), prohibit telemarketing calls to residential telephone subscribers who have

registered their phone numbers on the National Do-Not-Call Registry.

54.     The TCPA provides that is a violation of the law for a person whose phone number

is registered on the National Do-Not-Call Registry to receive more than one call on their phone

"within any 12-month period by or on behalf of the same entity" after the phone number has been

on the Registry for more than 30 days. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(ii).

55.     The penalty for each call placed in violation of the TCPA's restrictions on calling

phone numbers registered on the National Do Not Call Registry is up to $500 per call and up to

$1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

56.     Defendant's at least 94 calls to Mr. Hanson were "telephone solicitations" because

the calls were placed for the purpose of encouraging Mr. Hanson to obtain the products or services

of Defendant's clients. 47 C.F.R. § 64.1200(f)(15).

57.     Defendant knew or should have known that Mr. Hanson's phone number was

registered on the National Do-Not-Call Registry but called him anyway.

58.     Ms. Hanson is entitled to up to $500 per violation of Section 227(c) of the TCPA

(National Do-Not-Call Registry violations only) for each of the at least 94 calls, and up to

$1,500.00 for every violation determined to be willful.

WHEREFORE Plaintiff Jon C. Hanson requests the Court enter judgment against

Defendant James Ryder Interactive, LLC for up to $500 for each of their at least 94 violations and

up to $1,500.00 for each violation of Section 227(c) (National Do-Not-Call Registry violations

only) of the TCPA determined to be willful, for any applicable pre- or post-judgment interest, for

his Court costs and for all other relief that this Court deems just and proper.

**Count II - Violations of Missouri's No-Call Law, Mo. Rev. Stat. § 407.1098 *et seq.***

59. Mr. Hanson incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

60. Section 407.1098 of Missouri's No-Call Law provides that "no person or entity shall make or cause to be made any telephone solicitation to any residential subscriber in this state" who has registered their phone number on Missouri's No-Call List. Mo. Rev. Stat. § 407.1098.

61. Defendant's at least 94 calls to Mr. Hanson were "telephone solicitations" because the calls were placed for the purpose of encouraging Mr. Hanson to obtain the products or services of Defendant's clients. Mo. Rev. Stat. § 407.1095(2).

62. Mr. Hanson is a "residential subscriber" because he uses his cell phone primarily for personal or familial purposes. Mo. Rev. Stat. § 407.1095(3).

63. Defendant knew or had reason to know Mr. Hanson's phone number was registered on Missouri's No-Call List, yet Defendant continued to call him.

64. The penalty for calling a person whose phone number is registered on Missouri's No-Call List is up to $5,000.00 for each violation of Missouri's No-Call Law. Mo. Rev. Stat. § 407.1107.3.

65. Mr. Hanson is entitled to up to $5,000 for each of the at least 94 violations of Missouri's No-Call Law that was committed by Defendant.

WHEREFORE Plaintiff Jon C. Hanson requests the Court enter judgment against Defendant James Ryder Interactive, LLC for up to $5,000 for each of their at least 94 violations of Missouri's No-Call Law, for any applicable pre- or post-judgment interest, for his Court costs and for all other relief that this Court deems just and proper.

**BUTSCH ROBERTS & ASSOCIATES LLC**

By:/s/ *Christopher E. Roberts*
Christopher E. Roberts #61895MO
7777 Bonhomme Avenue, Suite 1300
Clayton, MO 63105
Telephone: (314) 863-5700
croberts@butschroberts.com

*Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2024, a copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/Christopher E. Roberts

10